IN THE SUPREME COURT OF NORTH CAROLINA

 2021-NCSC-52

 No. 332A20

 Filed 23 April 2021

 IN THE MATTER OF: M.S.A.

 Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from an order entered on 6

 February 2020 by Judge Jimmy L. Myers in District Court, Davidson County. This

 matter was calendared in the Supreme Court on 19 March 2021, but determined on

 the record and briefs without oral argument pursuant to Rule 30(f) of the North

 Carolina Rules of Appellate Procedure.

 No brief filed for petitioner-appellee.

 Edward Eldred for respondent-appellant father.

 MORGAN, Justice.

¶1 Respondent-father appeals from the trial court’s order terminating his

 parental rights to his minor child, M.S.A. (Mary1). In his sole argument on appeal,

 respondent-father asserts that his voluntary lack of communication with Mary from

 the inception of the period of his incarceration in November 2012 through the

 December 2019 private termination of parental rights hearing could not serve as a

 basis for the trial court’s conclusion that grounds existed to terminate his parental

 rights due to abandonment under N.C.G.S. § 7B-1111(a)(7) because the trial court did

 1 A pseudonym is used to protect the identity of the juvenile and for ease of reading.
 IN RE M.S.A.

 2021-NCSC-52

 Opinion of the Court

 not find, nor does the evidence support a finding, that respondent-father’s failure to

 contact Mary was willful. Because we conclude that clear, cogent, and convincing

 evidence is contained in the record to show that respondent-father admittedly ignored

 his ability to contact his daughter or her caretaker, we affirm the termination order.

 I. Factual and Procedural Background

¶2 This private termination action began on 12 December 2018 when petitioner,

 who is Mary’s maternal great, great aunt, filed a petition seeking to terminate the

 parental rights of both of Mary’s parents.2 On 1 March 2019, petitioner filed an

 amended petition alleging that Mary had resided with her continuously from October

 2010 until the filing of the petition, and that she had exercised sole legal and physical

 custody of Mary since June 2011. Petitioner claimed that she had provided for Mary’s

 financial, medical, emotional, and physical needs during this time of Mary’s

 habitation with petitioner, and that petitioner would continue to be able to do so.

 Petitioner further alleged that respondent-father was incarcerated at the time of the

 filing of the petition, that he had not visited with or seen Mary since 2011, and that

 he had not provided financial support nor sent any gifts or correspondence to Mary

 for at least five years. Petitioner filed her action in order to seek the termination of

 the parental rights of respondent-father on the basis of willful abandonment under

 N.C.G.S. § 7B-1111(a)(7) (2019). Respondent-father filed an answer denying

 2 Mary’s mother is not a party to this appeal.
 IN RE M.S.A.

 2021-NCSC-52

 Opinion of the Court

 petitioner’s material allegations.

¶3 The petition was heard during the 19 December 2019 session of District Court,

 Davidson County. Respondent-father did not contest petitioner’s allegations that he

 had previously demonstrated the ability to communicate with Mary’s mother and

 family members while incarcerated3, but offered testimony that he did not possess

 actual knowledge of the information that he needed to reach Mary or petitioner. On

 6 February 2020, the trial court entered an order terminating respondent-father’s

 parental rights, concluding that respondent-father had willfully abandoned Mary

 pursuant to N.C.G.S. § 7B-1111(a)(7) and that termination of respondent-father’s

 parental rights was in Mary’s best interests. Respondent-father appeals the trial

 court’s order, asking this Court to decide “whether an incarcerated parent who has

 not had contact with his child for eight years and does not know how to contact his

 child may lose his parental rights on the ground of abandonment.”

 II. Analysis

 3 Respondent-father takes exception with the trial court’s finding that he was also in

 regular contact with his attorney, arguing that he had simply testified that he knew how to
 get in contact with his attorney while incarcerated. Such an admission would appear to be
 detrimental to respondent-father’s contention that the evidence in the record could not
 establish his ability to contact Mary or petitioner, as it appears that respondent-father knew
 how to contact a person who presumably possessed the wherewithal to obtain and relay the
 information to respondent-father which was necessary to contact Mary and petitioner. As
 explained below, however, this contested finding by the trial court is unnecessary to support
 the trial court’s ultimate conclusion and is therefore excluded by us from any consideration.
 IN RE M.S.A.

 2021-NCSC-52

 Opinion of the Court

¶4 The North Carolina General Statutes set forth a two-step process for the

 termination of parental rights. After the filing of a petition for the termination of

 parental rights, a trial court conducts a hearing to adjudicate the existence or

 nonexistence of any grounds alleged in the petition as set forth in N.C.G.S. § 7B-1111.

 N.C.G.S. § 7B-1109(e) (2019). The petitioner carries the burden of proving by clear,

 cogent, and convincing evidence that grounds exist under N.C.G.S. § 7B-1111(a) to

 terminate a respondent-parent’s parental rights. In re A.U.D., 373 N.C. 3, 5–6, (2019).

 Upon an adjudication that at least one ground exists to terminate the parental rights

 of a respondent-parent, the trial court will then decide whether terminating the

 parental rights of the respondent-parent is in the child’s best interests. N.C.G.S. §

 7B-1110(a).

¶5 N.C.G.S. § 7B-1111(a)(7) states, in pertinent part, that the court may

 terminate parental rights upon a finding that the parent has willfully abandoned the

 juvenile for at least six consecutive months immediately preceding the filing of the

 petition. The only argument being voiced by respondent-father on this appeal

 concerns the trial court’s adjudication that respondent-father willfully abandoned

 Mary. He contends that the trial court’s findings of fact do not support its ultimate

 conclusion of law that he willfully abandoned Mary pursuant to N.C.G.S. § 7B-

 1111(a)(7).

¶6 When reviewing the trial court’s adjudication of the existence of a ground to
 IN RE M.S.A.

 2021-NCSC-52

 Opinion of the Court

 terminate the parental rights of a respondent-parent, we examine whether the trial

 court’s findings of fact “are supported by clear, cogent and convincing evidence and

 [whether] the findings support the conclusions of law.” In re E.H.P., 372 N.C. 388,

 392 (2019) (quoting In re Montgomery, 311 N.C. 101, 111 (1984)). Any factual findings

 of the trial court left unchallenged by an appellant are “deemed supported by

 competent evidence and are binding on appeal.” In re T.N.H., 372 N.C. 403, 407,

 (2019). We review the trial court’s conclusions of law under a de novo standard. In re

 C.B.C., 373 N.C. 16, 19 (2019).

¶7 Section 7B-1111(a)(7) permits the trial court to terminate a parent’s rights

 when that “parent has willfully abandoned the juvenile for at least six consecutive

 months immediately preceding the filing of the petition or motion.” Id. “Abandonment

 implies conduct on the part of the parent which manifests a willful determination to

 forego all parental duties and relinquish all parental claims to the child.” In re B.C.B.,

 374 N.C. 32, 35 (2020) (quoting In re Young, 346 N.C. 244, 251 (1997)). We have held

 that abandonment is evident when a parent “withholds his presence, his love, his

 care, the opportunity to display filial affection, and wil[l]fully neglects to lend support

 and maintenance[.]” Pratt v. Bishop, 257 N.C. 486, 501 (1962). “Although the trial

 court may consider a parent’s conduct outside the six-month window in evaluating a

 parent’s credibility and intentions, the ‘determinative’ period for adjudicating willful

 abandonment is the six consecutive months preceding the filing of the petition.” In re
 IN RE M.S.A.

 2021-NCSC-52

 Opinion of the Court

 N.D.A., 373 N.C. 71, 77 (2019) (quoting In re D.E.M., 257 N.C. App. 618, 619 (2018)).

¶8 Respondent-father does not challenge the trial court’s findings of fact which

 reflect that respondent-father “has never written letters,” has never “sent gifts or

 cards,” has never “provided financially” for Mary, and has never contacted petitioner

 “to inquire as to [Mary]’s well-being . . .” from the time of his incarceration in

 November 2012 until the filing of the amended termination petition on 1 March 2019.

 Nor does respondent-father dispute the trial court’s findings that respondent-father

 had neither “made an effort to ensure that he has a relationship with the minor child,”

 nor “reached out to [p]etitioner to inquire as to the minor child’s well-being since the

 minor child came into [p]etitioner’s custody.” Instead, respondent-father contends

 that the trial court’s remaining findings of fact do not establish the willfulness of the

 total nonperformance of his parental duties toward Mary, both during the relevant

 six-month period and in prior years.

¶9 In two respects, respondent-father contests the following portion of the trial

 court’s Finding of Fact 14, which he considers to be the linchpin of the trial court’s

 willfulness determination:

 While incarcerated, [r]espondent/father has always had
 the resources and ability to contact outside individuals,
 either through writing letters or by telephone. In fact,
 respondent/father stays in frequent contact with his family
 members and lawyers and has been in contact with
 respondent/mother. Respondent/father has never asked
 these individuals to assist him in getting in contact with
 Petitioner to inquire as to the minor child’s well-being, nor
 IN RE M.S.A.

 2021-NCSC-52

 Opinion of the Court

 has he asked for their help in maintaining a relationship
 with the minor child, despite having opportunities to do so.

First, respondent-father argues that he was not in “frequent contact” with his lawyers

and that he had not contacted Mary’s mother since 2012. Second, respondent-father

contends that it is untrue that he never asked any family member for petitioner’s

contact information, as he testified at the hearing that he asked petitioner’s sister for

petitioner’s telephone number and “she wouldn’t give [respondent-father] that.”

However, respondent-father concedes that Finding of Fact 14 is otherwise accurate

to the extent that it shows that he “was in frequent contact with some of his family

members and never asked those family members to help him contact [petitioner].”

Respondent-father’s further admission that “he wrote [the mother] one letter in 2012

and did not hear back from [the mother]” is susceptible to the reasonable

interpretation reflected in the trial court’s finding that “[r]espondent-father ha[d]

been in contact with respondent[-]mother.” Further, although respondent-father

offered uncontested testimony that he asked petitioner’s sister for the telephone

number of petitioner in 2012, nevertheless this evidence does not dilute the veracity

of the portion of the trial court’s Finding of Fact 14 that respondent-father had “never

asked these individuals to assist him in getting in contact with [p]etitioner to inquire

as to the minor child’s well-being.” A thorough analysis of the application of the

provisions of N.C.G.S. § 7B-1111(a)(7) regarding the ground of abandonment to

Finding of Fact 14 illustrates that respondent-father admits the validity of several of
 IN RE M.S.A.

 2021-NCSC-52

 Opinion of the Court

 the circumstances which the trial court determined in the finding and that

 respondent-father’s strongest example to support his interest in contacting

 petitioner—the request for her telephone number—occurred years outside of the

 determinative six-month statutory period. Respondent-father’s assertions are largely

 irrelevant to the gravamen of the ground of abandonment as to whether he

 manifested a “willful determination to forego all parental duties and relinquish all

 parental claims to the child.” In re B.C.B., 374 N.C. at 35.

¶ 10 This Court limits its “review to those challenged findings that are necessary to

 support the trial court’s determination that . . . parental rights should be

 terminated[.]” In re N.G., 374 N.C. 891, 900 (2020). Thus, even after disregarding the

 remaining segment of the trial court’s Finding of Fact 14 which is vigorously disputed

 by respondent-father that he “stays in frequent contact with his . . . lawyers,” the

 remainder of the trial court’s finding amply supports its conclusion that respondent-

 father willfully abandoned Mary.

¶ 11 Respondent-father claims that, even though he “had the ability to contact

 people on the outside and that he did not ask those people to help contact [petitioner],”

 it does not follow that he willfully abandoned Mary. This assertion suggests that

 respondent-father is introducing his incarceration as a mechanism by which to

 absolve his parental duty toward Mary and to allow him therefore to refrain from

 undertaking the effort to pursue parental involvement with Mary through contact
 IN RE M.S.A.

 2021-NCSC-52

 Opinion of the Court

 with those persons with whom he communicated during his incarceration. We have

 previously rejected such representations which respondent-father appears to foment:

 Incarceration, standing alone, is neither a sword nor a
 shield in a termination of parental rights decision.
 Although a parent’s options for showing affection while
 incarcerated are greatly limited, a parent will not be
 excused from showing interest in the child’s welfare by
 whatever means available.

 In re C.B.C., 373 N.C. at 19–20 (quoting In re D.E.M., 257 N.C. App. 618, 621 (2018))

 (extraneity omitted).

¶ 12 Here, it is undisputed that respondent-father, at a minimum, possessed the

 ability to seek Mary’s contact information from his relatives but declined to do so for

 a number of years. The trial court’s unchallenged findings reflect that respondent-

 father did not utilize “whatever means available” to display his interest in Mary’s

 welfare during his incarceration. In re C.B.C., 373 N.C. at 19–20. Instead,

 respondent-father withheld his love, care, and filial affection from Mary, both in the

 statutorily relevant six-month period prior to the filing of the petition to terminate

 parental rights and in the years preceding that time span. See Pratt, 257 N.C. at 501.

 As this constitutes willful abandonment, the trial court did not err in adjudicating

 the existence of this ground pursuant to N.C.G.S. § 7B-1111(a)(7) in terminating

 respondent-father’s parental rights.

 III. Conclusion
 IN RE M.S.A.

 2021-NCSC-52

 Opinion of the Court

¶ 13 Based on the foregoing, we conclude that the trial court properly determined

 that the parental rights of respondent-father were subject to termination pursuant to

 N.C.G.S. § 7B-1111(a)(7). Respondent-father does not challenge the trial court’s

 conclusion that termination of his parental rights was in Mary’s best interests.

 Consequently, we affirm the trial court’s order terminating respondent-father’s

 parental rights.

 AFFIRMED.